PATRICIA K. GILLETTE (CA BAR NO. 74461)
BROOKE D. ANDRICH (CA BAR NO. 238836)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759
pgillette@orrick.com
bandrich@orrick.com

JOSEPH C. LIBURT (CA BAR NO. 155507)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:   +1-650-614-7400
Facsimile:   +1-650-614-7401
jliburt@orrick.com

Attorneys for Defendant
TOYOTA MOTOR CREDIT CORPORATION
(incorrectly identified as "Toyota Motor Credit Corporation, aka Toyota Financial Services")

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LAWRENCE RANDAZZO,<br><br>         Plaintiff,<br><br>   v.<br><br>TOYOTA MOTOR CREDIT CORPORATION, aka TOYOTA FINANCIAL SERVICES,<br><br>         Defendant. | Case No.  2:08-cv-00802-HRH<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO RULE 12(f); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Judge:    The Hon. H. Russel Holland |

**NOTICE OF MOTION AND REQUEST FOR ORAL ARGUMENT**

TO PLAINTIFF LAWRENCE RANDAZZO AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Toyota Motor Credit Corporation ("TMCC")[1] will and hereby does move for an Order dismissing with prejudice Plaintiff Lawrence Randazzo's fourth and fifth claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is made on the grounds that the Complaint fails to state a claim upon which relief can be granted as to the fourth and fifth claims for relief. In the alternative, TMCC will and hereby does move to strike any reference to non-contract damages in connection with Plaintiff's fourth claim for relief. The motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all allegations in the Complaint, any request for judicial notice, oral argument at the hearing, and any other matter which the Court deems appropriate.

TMCC further requests that the Court schedule oral argument regarding this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The present matter concerns an Arizona employee working at the Arizona facility of a national employer, Defendant Toyota Motor Credit Corporation. The employee was terminated after he lied to his employer about a matter involving potentially criminal conduct by an executive of the employer.

Recognizing that he has no legitimate claims, the employee, Plaintiff Lawrence Randazzo, has trumped up charges that he was terminated because he is Italian-American. After the EEOC found no basis for Plaintiff's claims, Plaintiff raced to this Court with a litany of inapplicable claims based not on the laws of Arizona (apparently because he knows that Arizona employment law affords him no relief), but on the laws of California, which has nothing to do with this dispute.

---

[1] Plaintiff has erroneously captioned his complaint by stating that TMCC is "aka Toyota Financial Services." This is incorrect.

While all of Plaintiff's claims are baseless, two must be dismissed at this stage pursuant to Rule 12(b)(6). Arizona law applies to Plaintiff, who never worked for TMCC in California. Plaintiff pleads claims that are plainly barred by Arizona law, but tries to assert them under California law. The Court should not permit this, as there is no factual basis for California law to apply, and even under California law, these claims fail on their face.

First, Plaintiff incorrectly alleges that California law applies to his fourth claim for breach of the implied covenant of good faith and fair dealing. However, as Plaintiff's factual allegations make clear, Arizona law controls this claim. And under Arizona law, this claim is barred both by the applicable statute of limitations and the Arizona Employment Protection Act. Even if the Court were to ignore these bars, under either Arizona or California law, Plaintiff's implied covenant claim still fails because the implied covenant cannot be relied upon to create contractual duties beyond what the parties have expressly agreed to. Plaintiff's Complaint attempts to use the implied covenant to prohibit TMCC from terminating him without cause, but the alleged facts cannot support this. In addition, Plaintiff's Complaint fails to set forth the terms of any alleged contract between the parties, and the implied covenant claim must be dismissed on this separate basis. Plaintiff also seeks improper relief in connection with this claim, and TMCC requests that the Court strike such references.

Second, Plaintiff's claim for intentional infliction of emotional distress must be dismissed because Plaintiff's allegations fail, as a matter of law, to rise to the level of "extreme and outrageous" conduct on the part of TMCC. Arizona law imposes a high bar on plaintiffs alleging intentional infliction of emotional distress. Indeed, it is all but impossible for a plaintiff to allege sufficiently extreme conduct in the employment context. The two allegations Plaintiff provides in support of his claim—that TMCC conducted a "coercive investigation" of Plaintiff and that TMCC leaked "false and derogatory information" about Plaintiff—fall far short of the extreme and outrageous conduct necessary to state an intentional infliction claim. For these reasons, which are set forth fully below, the Court should grant TMCC's motion to dismiss Plaintiff's fourth and fifth claims for relief with prejudice.

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff Lawrence Randazzo asserts claims for discrimination on the basis of race, sex, and national origin; breach of the covenant of good faith and fair dealing; and intentional infliction of emotional distress. The Complaint, filed on April 28, 2008, alleges that Plaintiff was employed by TMCC from April 1, 2005 to February 2, 2007, when his employment was terminated. Complaint, ¶¶ 12, 22. Plaintiff alleges that this termination was motivated by his race (Caucasian), sex (male), and national origin (Italian-American). Complaint, ¶¶ 23, 31, 37, 43.

In addition, Plaintiff's Complaint alleges that TMCC notified Plaintiff in December 2006 that he would be promoted to a position that would require him to relocate. Complaint, ¶ 14. Plaintiff further alleges that he paid a $25,000.00 deposit on a new home purchase in connection with the anticipated relocation, and that his deposit was forfeited as a result of TMCC's decision to terminate his employment. Complaint, ¶¶ 16, 24.

## III. ARGUMENT

### A. Plaintiff's Fourth Claim for Relief for Breach of the Covenant of Good Faith and Fair Dealing Fails.

Plaintiff's fourth claim for relief must be dismissed for several independent reasons. Plaintiff alleges that he and TMCC entered into a contract called the "Toyota Relocation and Repayment Agreement" (the "Agreement"). Complaint, ¶ 46. He further alleges that the Agreement was governed by California law and included an implied duty of good faith and fair dealing. Plaintiff contends that TMCC's decision to terminate his employment breached this implied duty. These allegations fail to state a claim upon which relief can be granted.

#### 1. Arizona Law, Not California Law, Controls Plaintiff's Fourth Claim.

Plaintiff's Complaint alleges that California law controls the fourth claim for "breach of the duty of good faith and fair dealing." Complaint, ¶¶ 46-52. It is clear from the face of Plaintiff's Complaint, however, that Arizona law—not California law—applies to Plaintiff's fourth claim. As Plaintiff alleges, he was a resident of Arizona at all times relevant to his Complaint. Complaint, ¶ 9. Plaintiff performed services for TMCC "out of the TMCC's Western

Collections Service Center office in the state of Arizona" "[a]t all relevant times." Complaint, ¶ 8. And the parties' Agreement—the contract forming the basis of Plaintiff's claim for breach of the duty of good faith and fair dealing—contains no choice-of-law provision. Request for Judicial Notice, Ex. A. Under these circumstances, Plaintiff's bare allegation that the Agreement "was a contract entered into in California and governed by California law" must be rejected.

In contract disputes, Arizona courts analyze choice-of-law issues pursuant to the Restatement (Second) of Conflict of Laws (the "Restatement"). *Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 441 (2003); *Burr v. Renewal Guaranty Corp.*, 468 P.2d 576, 577 (1970). Under the Restatement, where the parties' contract does not contain an explicit choice–of-law provision, the applicable law is deemed to be that of "the state which…has the most significant relationship to the transaction and the parties…" Restatement (Second) of Conflict of Laws, § 188. Several factors are considered in determining which state has the "most significant relationship": "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.*

Here, the majority of factors point to Arizona. Plaintiff resided in Arizona and performed work for TMCC in Arizona at the time of the negotiation and execution of the Agreement. Complaint, ¶¶ 8-9. TMCC conducted business and employed Plaintiff in Arizona. Complaint, ¶¶ 8-10. And the subject matter of the Agreement was Plaintiff's relocation from Arizona to Maryland. Request for Judicial Notice, Ex. A. In light of these facts, Plaintiff's unsupported allegation that the Agreement was "entered into in California" must be rejected. Although TMCC's U.S. headquarters are located in California, this fact standing alone is not sufficient to outweigh the many factors pointing to Arizona as the state with "the most significant relationship to the [Agreement] and the parties." Accordingly, Arizona law must be applied to Plaintiff's fourth claim for breach of the duty of good faith and fair dealing.

### 2. Plaintiff's Claim for Breach of the Duty of Good Faith and Fair Dealing Fails Under Arizona Law.

#### a. Plaintiff's Claim Is Time-Barred.

Under Arizona law, Plaintiff's claim for breach of the duty of good faith and fair dealing is time-barred and must be dismissed without leave to amend on this basis. As the court held in *Zenaty-Paulson v. McLane/Sunwest, Inc.*, 2000 U.S. Dist. LEXIS 20408 (D. Ariz. March 20, 2000), where a claim for breach of the duty of good faith and fair dealing merely "duplicates" a claim for breach of an employment agreement, the one-year statute of limitations set forth in Arizona Revised Statute Section 12-541 applies. Specifically, Section 12-541 provides that actions "[f]or breach of an oral or written employment contract" must be commenced within one year. Ariz. Rev. Stat. § 12-541. Plaintiff alleges that TMCC breached the covenant of good faith and fair dealing by terminating Plaintiff's employment, effective February 2, 2007. *See* Complaint, ¶¶ 22, 51. Plaintiff waited until April 28, 2008 to file the present action against TMCC. *See* Complaint. Therefore, Plaintiff's claim for breach of the duty of good faith and fair dealing is time-barred.

#### b. Plaintiff's Claim Is Barred by the Arizona Employment Protection Act.

The Arizona Employment Protection Act also dictates that Plaintiff's claim for breach of the duty of good faith and fair dealing must be dismissed. Under Arizona law, "there is no general tort for bad faith arising out of the termination of employment contracts." *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067, 1076 (D. Ariz. 2002). An employee may bring such a claim against his employer in very limited situations. Specifically, "[a]n employee has a claim against an employer for termination of employment only if" the termination breaches an employment contract, violates a statute, or was retaliatory. Ariz. Rev. Stat. § 23-1501(3)(a)-(c). Plaintiff's allegations that the termination violated some unspecified law because it was not "for cause" and denied Plaintiff "benefits provided to him by the Agreement" do not fall under any of these enumerated exceptions. Complaint, ¶¶ 49-52. Plaintiff does not allege that TMCC breached any employment contract by terminating his employment. Nor does Plaintiff point to a

violation of any Arizona statute or any retaliatory motivation. Therefore, Plaintiff's claim for breach of the duty of good faith and fair dealing does not fall within the exceptions set forth in the Employment Protection Act and must be dismissed for this separate reason. *See, e.g., Baron v. Arizona*, 2008 U.S. App. LEXIS 6695 (9th Cir. Ariz. Mar. 21, 2008) (affirming dismissal of plaintiff's claim for breach of the duty of good faith and fair dealing).

### 3. Even If California Law Applies, Plaintiff's Fourth Claim Still Must Fail.

Plaintiff's claim for breach of the duty of good faith and fair dealing must be dismissed even if (as Plaintiff contends) California law applies. Just as Plaintiff's allegations fail to meet the standards set forth under Arizona law, Plaintiff cannot state a claim for breach of the covenant under California law for several reasons.

#### a. Plaintiff Fails to Attach or Set Forth the Terms of the Alleged Contract.

At the outset, under California law, a claim for breach of the covenant of good faith and fair dealing is wholly dependent upon the alleged contract. *Kim v. Regents of the Univ. of Cal.*, 80 Cal. App. 4th 160, 164 (2000). Plaintiff merely alleges that he and TMCC entered into a contract called the "Toyota Relocation and Repayment Agreement." Complaint, ¶ 46. However, this allegation is insufficient as a matter of law for several reasons. First, Plaintiff fails to state whether the alleged contract is written, oral, or implied. *Otworth v. Southern Pac. Tranp.*, 166 Cal. App. 3d 452, 458 (1985) (complaint must "indicate on its face whether the contract is written, oral, or implied by conduct"). Second, assuming Plaintiff's claim for relief is based on the alleged breach of a written contract, "the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." *Otworth*, 166 Cal. App. 3d at 458-59. Because Plaintiff has failed to set forth the terms of the alleged contract, or to attach and incorporate the alleged contract, he has not complied with *Otworth* and this claim must be dismissed.

### b. **Plaintiff Fails to State a Claim for Breach of the Covenant Under California Law.**

Moreover, Plaintiff's Complaint fails to state a claim for breach of the covenant of good faith and fair dealing under California law, and this claim must be dismissed on this separate basis. Plaintiff alleges that the parties' Agreement "included an implied covenant of good faith and fair dealing," and that the "effect" of this implied covenant "is that any termination having the effect of denying the employee-party the benefits of the Contract must be for cause and not in violation of law." Complaint, ¶¶ 47, 49. In short, Plaintiff alleges that the Agreement includes an implied term not to terminate without cause.

However, the plain language of the Agreement does not support Plaintiff's allegation. It contains no express promise on TMCC's part not to terminate Plaintiff without cause. Request for Judicial Notice, Ex. A. Nor can Plaintiff rely on the implied covenant to create such a term. Indeed, the nature and extent of the implied covenant of good faith and fair dealing is limited by the *explicit promises* contained in the parties' agreement. *Foley v. Interactive Data*, 47 Cal. 3d 654, 690 (1988). The implied covenant does not create contractual duties where none exist. *Guz v. Bechtel Nat'l*, 24 Cal. 4th 317, 349-50 (2000). Accordingly, where, as here, the alleged contract contains no express requirement that Plaintiff not be terminated without cause, the covenant cannot be used to create such a requirement. *Foley*, 47 Cal. 3d at 698, n.39. As the California Supreme Court has explained, "[t]he covenant cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-50. Therefore, Plaintiff's attempt to create a contractual obligation where there is none fails, and his fourth claim for relief must be dismissed.

### 4. **Plaintiff Seeks Improper Remedies in Connection with His Fourth Claim for Relief for Breach of the Duty of Good Faith and Fair Dealing.**

Plaintiff's fourth claim for relief for breach of the implied covenant of good faith and fair dealing also includes a prayer for improper damages. Specifically, Plaintiff seeks "consequential damages, including reimbursement for emotional harm," punitive damages, and

"costs, including expenses and reasonable attorneys' fees." Complaint, ¶ 52. As a matter of law in both Arizona and California, these types of relief are not available to Plaintiff in connection with this type of claim. Under Arizona law, "the remedy for breach of [the] implied covenant [of good faith and fair dealing] is ordinarily by action on the contract." *Burkons v. Ticor Title Ins. Co.*, 813 P.2d 710, 720 (1991); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters, and Cement Masons Local 395 Pension Trust Fund*, 38 P.3d 12, 29 (2002) (absent a "special relationship," bad faith claims sound in contract, not tort). As a result, where an employee's termination amounts to a breach of contract, "the remedies for the breach are limited to the remedies for a breach of contract." Ariz. Rev. Stat. 23-1501(3)(a).

Likewise, California courts view the covenant of good faith and fair dealing as "essentially…a contract term." *Cates Contr. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999). Accordingly, "compensation for its breach has almost always been limited to contract rather than tort remedies." *Id.* (quoting *Foley*, 47 Cal. 3d at 684). The only recognized exception to this rule applies to cases involving insurance policies. *Id.* (citing *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1180-81 (1993)). Because Plaintiff cannot recover any non-contract damages under either Arizona or California law, any references to such damages in connection with his fourth claim for relief must be stricken from the Complaint.

**B.   Plaintiff's Fifth Claim for Relief for Intentional Infliction of Emotional Distress Fails.**

The Court also must dismiss Plaintiff's fifth claim for intentional infliction of emotional distress. Plaintiff alleges that TMCC "engaged in a coercive investigation" of Plaintiff and "allow[ed] false and derogatory information regarding the Plaintiff to be leaked to the credit industry." Complaint, ¶ 53. Whether the applicable law is Arizona or California,[2] Plaintiff's allegations are insufficient to state a claim for intentional infliction of emotional distress. As a result, Plaintiff's fifth claim for relief must be dismissed.

---

[2] It is not clear whether Plaintiff attempts to assert his fifth claim for relief under Arizona or California law. Complaint, ¶ 56. Although there is no basis for California law to apply, TMCC addresses the laws of both states to demonstrate the baselessness of the claim.

1. **Plaintiff Cannot State a Claim for Intentional Infliction of Emotional Distress Under Arizona Law.**

It is all but impossible for a plaintiff to allege a claim for intentional infliction of emotional distress arising out of the employment context. Under Arizona law, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atlantic Systems Leasing Int'l, Inc.*, 183 Ariz. 550, 554 (1995) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), *cert. denied*, 498 U.S. 811 (1990)). This is because, as a matter of law, an everyday personnel action supported by a legitimate business purpose does not give rise to such a claim—much more is required. *See id.* Under Arizona law, a claim for intentional infliction of emotional distress requires proof of three elements: (1) "extreme and outrageous" conduct by the defendant; (2) defendant's intent to cause emotional distress or defendant's extreme disregard for the near certainty that such distress will result from defendant's conduct; and (3) severe emotional distress that results from defendant's conduct. *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (1987). To meet the first prong, "[a] plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz*, 183 Ariz. at 554 (quoting *Cluff v. Farmers Ins. Exchange*, 10 Ariz. App. 560, 562 (1969)).

Not surprisingly, Plaintiff's allegations fall far short of meeting this standard. Neither TMCC's allegedly coercive investigation, nor TMCC's alleged leaking of "false and derogatory information" about Plaintiff can be regarded as "atrocious and utterly intolerable in a civilized community." *Mintz*, 183 Ariz. at 554. A review of Arizona cases demonstrates Plaintiff's failure to meet this high bar. In *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (1994), the plaintiff's allegations that his employer terminated him in the middle of the night in front of co-workers and media, prohibited plaintiff from collecting his personal effects, had plaintiff escorted from the premises by armed security guards, and prohibited plaintiff from using the restroom unless accompanied into the stall by the security guards, were insufficient to survive

summary judgment on his intentional infliction claim.  Similarly, in *Perez v. Curcio*, 710 F. Supp. 259, 262 (D. Ariz. 1989), the court held that the defendants' alleged conduct of demoting plaintiff, then conducting a "witch hunt" to "dig up" good cause to terminate her could "hardly be characterized as 'outrageous,' 'extreme,' or 'beyond the bounds of human decency.'"

Indeed, Arizona courts routinely dismiss intentional infliction of emotional distress claims on this basis.  *See, e.g., Barkclay v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 95260 (D. Ariz. Dec. 13, 2007) (employee's allegations that employer spread rumors that she shoplifted and removed her from the work schedule insufficient to support an IIED claim); *Mintz*, 183 Ariz. at 554-55 (affirming lower court's grant of employer's motion to dismiss).  Plaintiff's allegations do not come close to the level of outrageousness alleged in *Nelson* or *Perez*, and the conduct in those cases fell short of establishing an intentional infliction claim.  As a matter of Arizona law, Plaintiff's fifth claim for relief must be dismissed for failure to state a claim.

**2. Plaintiff's Intentional Infliction of Emotional Distress Claim Also Fails Under California Law.**

In the alternative and assuming that Plaintiff seeks to assert his fifth claim for relief under California law,[3] Plaintiff still fails to allege conduct which is sufficient to state a claim for intentional infliction of emotional distress.  Under California law, a plaintiff must allege conduct which is "extreme and outrageous," going beyond all possible bounds of human decency and otherwise intolerable in a civilized society.  *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1123, 1128-29 (1989); *see also King v. AC&R Adver.*, 65 F.3d 764, 769 (9th Cir. 1995) (citing *Yurick*).  "The requirements of th[is] rule are rigorous, and difficult to satisfy."  *Id.*  Courts are empowered to determine as a matter of law whether the conduct alleged is extreme and outrageous.  *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 44 (1987).

Again, Plaintiff's allegations do not meet California's standard of "extreme and outrageous" conduct.  Plaintiff's allegation that TMCC conducted a "coercive investigation" fails because "[a] simple pleading of personnel management activity is insufficient to support a claim

---

[3] Again, there is no factual basis for California law to apply, but TMCC addresses California law to show that the claim fails regardless of which state's law Plaintiff seeks to use.

of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 80 (1996). Further, a coercive investigation does not rise to the level of extreme and outrageous conduct. *See, e.g., Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066-67 (9th Cir. 2004) (affirming grant of defendant's motion to dismiss where plaintiff's IIED claim relied on allegations that defendant conducted building inspections and sent plaintiff fraudulent documents); *Pitman v. City of Oakland*, 197 Cal. App. 3d 1037, 1047-48 (1988) (allegations of "great embarrassment, shame, and humiliation resulting from termination" insufficient).

Likewise, Plaintiff's allegation that TMCC "allow[ed] false and derogatory information regarding the Plaintiff to be leaked to the credit industry" fails to support his intentional infliction claim. This allegation can be likened to a defamation claim, which California courts have specifically found not to be extreme and outrageous conduct. *See Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1191 (C.D. Cal. 2002) (rejecting intentional infliction claim based on allegedly defamatory statement); *Yurick*, 209 Cal. App. 3d at 1128-29 (finding that insults, indignities, threats, and annoyances do not suffice to state a claim for intentional infliction of emotional distress). Therefore, Plaintiff's fifth claim for relief must be dismissed as a matter of established California law.

## IV.  CONCLUSION

For the reasons set forth above, TMCC respectfully requests that the Court grant its motion in entirety and dismiss Plaintiff's fourth and fifth claims for relief with prejudice.

Dated: August 5, 2008

PATRICIA K. GILLETTE
JOSEPH C. LIBURT
BROOKE D. ANDRICH
Orrick, Herrington & Sutcliffe LLP

/s/ Brooke D. Andrich
BROOKE D. ANDRICH
Attorneys for Defendant
Toyota Motor Credit Corporation

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on August 5, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

James Burr Shields, II burrshields@jbslaw.net, gailivey@jbslaw.net
John A. Conley    johnconley@jbslaw.net
W. Black Simms    blackesimms@jbslaw.net
Patricia Kruse Gillette pgillette@orrick.com, pdawson@orrick.com
Joseph Charles Liburt jiliburt@orrick.com, tmcbride@orrick.com
Brooke D. Andrich    bandrich@orrick.com, elee@orrick.com

☐ I hereby certify that on _____, I served the attached document by _____ (insert service method: mail, courier service, in-person delivery, e-mail) on the following, who are not registered participants of the CM/ECF System:

_____

_____

                                                                 s/ Eloise Lee
                                                                   ELOISE LEE

OHS West:260435663.1