PATRICIA K. GILLETTE (CA BAR NO. 74461)
BROOKE D. ANDRICH (CA BAR NO. 238836)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759
pgillette@orrick.com
bandrich@orrick.com

JOSEPH C. LIBURT (CA BAR NO. 155507)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:   +1-650-614-7400
Facsimile:   +1-650-614-7401
jliburt@orrick.com

Attorneys for Defendant
TOYOTA MOTOR CREDIT CORPORATION
(incorrectly identified as "Toyota Motor Credit Corporation, aka Toyota Financial Services")

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LAWRENCE RANDAZZO,<br><br>    Plaintiff,<br><br>  v.<br><br>TOYOTA MOTOR CREDIT CORPORATION, aka TOYOTA FINANCIAL SERVICES,<br><br>    Defendant. | Case No.  2:08-cv-00802-HRH<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO RULE 12(f)**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Judge:     The Hon. H. Russel Holland |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Plaintiff's Fourth Claim for Relief for Breach of the Covenant of Good Faith and Fair Dealing Fails ...............................................................................1

        1. Arizona Law, Not California Law, Controls Plaintiff's Fourth Claim ...............................................................................................1

        2. Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails Under Arizona Law..................................................2

            a. Plaintiff's Breach of Covenant Claim Fails Because It Contradicts the Express Terms of the Agreement .........................2

            b. Plaintiff's Fourth Claim Is Time-Barred.........................................3

            c. Plaintiff's Claim Is Barred by the Arizona Employment Protection Act ....................................................................................5

        3. Even if California Law Applies, Plaintiff's Fourth Claim Fails .................7

            a. Plaintiff Fails to State a Claim for Breach of the Covenant Under California Law ...................................................................7

            b. Plaintiff Seeks Improper Remedies for His Fourth Claim for Relief for Breach of the Covenant ...................................................9

                (1) Arizona Law.........................................................................9

                (2) California Law ......................................................................9

    B. Plaintiff's Fifth Claim for Relief for Intentional Infliction of Emotional Distress Fails..................................................................................................10

        1. Plaintiff's Claim Fails Under Arizona Law ............................................10

        2. Plaintiff's Claim Fails Under California Law .........................................10

III. CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITY

Page

## FEDERAL CASES

*Aqua-Marine Constructors v. Banks*,
  110 F.3d 663 (9th Cir. 1997) ............................................................................. 1, 2

*Bodett v. Coxcom, Inc.*,
  366 F.3d 736 (9th Cir. 2004) .................................................................................. 6

*Baron v. State of Arizona et al.*,
  208 U.S. App. LEXIS 6695 (9th Cir. 2008) ........................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  __ U.S. __, 127 S. Ct. 1955 (2007) abrogating *Conley v. Gibson*,
  355 U.S. 41, 78 S. Ct. 99 (1957) ............................................................................ 8

*Fallar v. Compuware Corporation*,
  202 F. Supp. 2d 1067 (D. Ariz. 2002) ............................................................... 5, 9

*Gibson v. American Airlines*,
  1996 U.S. Dist. LEXIS 7977 (N.D. Cal. June 4, 1996) ........................................ 11

*Miranda v. Clark County, Nev.*,
  279 F.3d 1102 (9th Cir. 2002) ................................................................................ 8

*Perez v. Curcio*,
  710 F. Supp. 259 (D. Ariz. 1989) ......................................................................... 10

*S.E.C. v. Cross Financial Services, Inc.*,
  908 F. Supp. 718 (C.D. Cal. 1995) ....................................................................... 10

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) .................................................................................. 8

## STATE CASES

*Burkons v. Ticor Title Ins.*,
  813 P.2d 710 (Ariz. 1991) ...................................................................................... 9

*Burr v. Renewal Guaranty Corp.*,
  468 P.2d 576 (Ariz. 1970) ...................................................................................... 1

*Carma Developers v. Marathon Devel. California*,
  826 P.2d 710 (Cal. 1992) ....................................................................................... 8

*Cates Constr. v. Talbot Partners*,
  980 P.2d 407 (Cal. 1999) ....................................................................................... 9

*Cronin v. Sheldon*,
  991 P.2d 231 (Ariz. 1999) ...................................................................................... 5

**TABLE OF AUTHORITY**
**(continued)**

**Page**

*Crump v. P&C Food Markets*,
   576 A.2d 441 (Vt. 1990) ............................................................................................... 11

*Foley v. Interactive Data Corp.*,
   765 P.2d 373 (Cal. 1988) ............................................................................................ 7, 10

*Graham v. Commonwealth Edison*,
   742 N.E.2d 858 (Ill. App. Ct. 2000) ............................................................................. 11

*Guz v. Bechtel National*,
   8 P.3d 1089 (Cal. 2000) .............................................................................................. 8, 10

*Hunter v. Upright*,
   864 P.2d 88 (Cal. 1993) .................................................................................................. 9

*Manterola v. Farmers Ins. Exch.*,
   30 P.3d 639 (Ariz. Ct. App. 2001) .................................................................................. 5

*Mintz v. Bell Atlantic Systems*,
   183 Ariz. 550 (1995) ..................................................................................................... 10

*Nelson v. Phoenix Resort Corp.*,
   888 P.2d 1375 (Ariz.1994) ........................................................................................... 10

*Rawlings v. Apodaca*,
   726 P.2d 565 (Ariz. 1986) .............................................................................................. 9

*Redhair v. Kinerk et al.*,
   183 P.3d 544 (Ariz. Ct. App. 2008) ............................................................................ 3, 4

*Rulon-Miller v. IBM*,
   162 Cal. App. 3d 241 (1984) ........................................................................................ 11

*Smithson v. Nordstrom, Inc.*,
   664 P.2d 1119 (Or. 1983) ............................................................................................. 11

*Swanson v. The Image Bank, Inc.*,
   77 P.3d 439 (Ariz. 2003) ................................................................................................ 1

*Tandy v. Bone*,
   283 Ark. 399, 678 S.W.2d 312 (Ark. 1984) ................................................................. 11

*Taylor v. Graham County Chamber of Commerce*,
   33 P.3d 518 (Ariz. Ct. App. 2001) ............................................................................. 6, 7

*Wagenseller v. Scottsdale Memorial Hospital*,
   710 P.2d 1025 (Ariz. 1985) ............................................................................................ 3

*Wells Fargo Bank v. Ariz. Laborers*,
   38 P.3d 12 (Ariz. 2002) .................................................................................................. 9

# TABLE OF AUTHORITY
### (continued)

**Page**

*Woodward v. Chirco Constr. Co.,*
  687 P.2d 1269 (Ariz. 1984) ............................................................................................ 5

### STATE STATUTES

Ariz. Rev. Stat. § 23-1501 ................................................................................................. 5

Ariz. Rev. Stat. § 23-1501(3) ............................................................................................ 5

Ariz. Rev. Stat. § 23-1501(3)(c) ........................................................................................ 6

Ariz. Rev. Stat. § 23-1501(3)(d) ........................................................................................ 6

Ariz. Rev. Stat. § 23-1501(3)(a) ........................................................................................ 6

Ariz. Rev. Stat. § 23-1501(3)(b) ........................................................................................ 6

Cal. Lab. Code §2922 ........................................................................................................ 7

### MISCELLANEOUS

C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. ............................... 8

## I. INTRODUCTION

Plaintiff, who resided in Arizona, negotiated the agreement at issue in Arizona, and performed his services in Arizona, does not like that Arizona law prohibits the recovery of tort damages against his former employer, Toyota Motor Credit Corporation ("TMCC"). Therefore, Plaintiff advances the following proposition to avoid dismissal of his tort claims: California law governs whenever a national employer with operations in Arizona is headquartered in the State of California. While a novel theory, that is not the law.

Arizona law applies to Plaintiff's claims, but neither California nor Arizona law allows Plaintiff to recover for "Breach of the Covenant of Good Faith and Fair Dealing" or "Intentional Infliction of Emotional Distress." Accordingly, TMCC asks the Court to dismiss Plaintiff's Fourth and Fifth Claims for Relief.

## II. ARGUMENT

### A. Plaintiff's Fourth Claim for Relief for Breach of the Covenant of Good Faith and Fair Dealing Fails.

Arizona law governs Plaintiff's Fourth Claim under choice of law principles. Regardless of which state's law applies, however, Plaintiff's Fourth Claim should be dismissed.

#### 1. Arizona Law, Not California Law, Controls Plaintiff's Fourth Claim.

The Parties agree that the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (the "Restatement") governs whether Arizona or California substantive law applies here. *See Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003); *Burr v. Renewal Guaranty Corp.*, 468 P.2d 576, 577 (Ariz. 1970); *see also* Plf. Opp., pp. 2-3. Accordingly, unless the agreement contains an express choice-of-law provision, the following factors are considered to determine which state's law applies: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domiciles, residence, nationality, place of incorporation and place of business of the parties." Restatement § 188. These factors "are to be evaluated according *to their relative importance* with respect to the *particular issue*," not weighted equally. *Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 674 (9th Cir. 1997) (citing Restatement § 188(2)). And, "[i]f the place of negotiating the contract and the place of performance are in the

same state, the local law of this state will usually be applied." *Id*. (citing Restatement § 188(3)).

Here, the overwhelming weight of the relevant factors favors application of Arizona law. Plaintiff only offers one factor in support of California law—that TMCC's national headquarters are located in California. Although Plaintiff discuss many other supposed "factors," they are merely iterations of this one factor. For example, Plaintiff suggests that the Relocation Policy "emanat[es] from the Defendant's headquarters in California" and that TMCC's decisionmakers are located in California. Plf. Opp., p. 3. But the fact of TMCC's California headquarters is more than offset by the more significant factors pointing to Arizona:[1] Plaintiff resided in *Arizona* (Complaint, ¶ 9); Plaintiff negotiated the contract in *Arizona* (*see* Complaint, ¶¶ 8, 15); Plaintiff performed services for TMCC in *Arizona* (Complaint, ¶ 8); Plaintiff was to relocate to Maryland from *Arizona* (Complaint, ¶¶ 14, 15); and the purpose of the Agreement was to insure Plaintiff's economic loss in leaving *Arizona* (Complaint, ¶ 45). Moreover, because the Agreement was negotiated in Arizona and performed in Arizona (*see* Complaint, ¶¶ 8, 15), there is a strong presumption that Arizona law applies. *See Aqua-Marine Constructors,* 110 F.3d at 674 (citing Restatement § 188(3)). Clearly, Arizona law applies to Plaintiff's Fourth Claim.

**2. Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails Under Arizona Law.**

**a. Plaintiff's Breach of Covenant Claim Fails Because It Contradicts the Express Terms of the Agreement**

Plaintiff concedes that the Agreement contains an at-will provision and that TMCC could thus terminate his employment without cause. Plt. Opp., p. 5. Plaintiff nevertheless contends that "<u>Defendant may not</u>, consistent with the duty of good faith and fair dealing, <u>terminate an employee for other than good cause</u> and thereby avoid the obligations to pay the benefits provided by the Agreement." Plt. Opp., pp. 4-5 (emphasis added). Plaintiff cites no Arizona authority for this proposition, and it is contrary to Arizona law.

---

[1] The remaining "factors" Plaintiff discusses are irrelevant to the analysis, and not "factors" at all. Whether the relocation was to occur "at the request of the Employer" (Plf. Opp., p. 3) or of the Plaintiff, and whether TMCC has a Domestic Relocation Policy that applies nationwide, are irrelevant to the five Restatement factors. Also irrelevant is that the Agreement was subject to company approval and could be modified only with company consent—the Agreement was also subject to Plaintiff's approval, and as a mutual contract could be modified only with his consent as well. By repeating the residence factor in different ways, and making allegations that are entirely irrelevant to the analysis, Plaintiff tries to distract the Court from the many factors that strongly weigh in favor of Arizona law.

An implied obligation not to terminate Plaintiff's benefits without cause would clearly contradict the express terms of this Agreement. As Plaintiff acknowledges in his Opposition, "[t]he relevant inquiry always will focus on the *contract itself*, to determine what the parties did agree to." *Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1040 (Ariz. 1985). Here, the parties explicitly agreed that TMCC could terminate Plaintiff's employment—and thus his benefits—without cause. Agreement, § 5.4. Nowhere does the Agreement mention any obligation not to terminate Plaintiff or his benefits without cause. Accordingly, under Arizona law, there cannot be an implied obligation not to terminate Plaintiff's benefits without cause. *See id.* at 1040. Plaintiff's argument directly contradicts the Arizona Supreme Court's clear mandate that the covenant of good faith does not create an obligation not to terminate the employment agreement without cause:

> "We . . . recognize an implied covenant of good faith and fair dealing in the employment-at-will contract, although *that covenant does not create a duty for the employer to terminate the employee only for good cause*. The *covenant does not protect the employee from a 'no cause' termination* because tenure was never a benefit inherent in the at-will agreement."

*Id.* at 1040 (emphasis added). Therefore, Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing under Arizona law.

### b. Plaintiff's Fourth Claim Is Time-Barred.

Plaintiff's claim is time-barred under Arizona's one-year statute of limitations for breach of employment contracts. Plaintiff contends that the one-year statute of limitations set forth in A.R.S. §12-541 does not apply here because that statute applies only to employment contracts, and the Agreement is not an employment contract. Plaintiff is wrong.

Section 12-541[2] is applied expansively "to employment contracts generally." *Redhair v. Kinerk et al.*, 183 P.3d 544, 548 (Ariz. Ct. App. 2008).[3] The *Redhair* court rejected the plaintiff's contention that Section 12-541(3) applies only to employment termination actions, that his claim for unpaid bonus was not an employment termination action, and that his bonus contract thus was

---

[2] Section 12-541 provides a one-year statute of limitations "[f]or breach of an oral or written employment contract" Ariz. Rev. Stat. § 12-541(3).

[3] "[The Arizona] legislature has repeatedly determined that *employment claims* should be governed by *relatively short statutes of limitation*." *Redhair*, 183 P.3d at 548 (emphasis added).

- 3 -

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION TO STRIKE;
CASE NO. 2:08-CV-00802

1  not an "employment contract," holding the lower court did not err in its "application of § 12-
2  541(3) so as to *include all contracts defining specific responsibilities of the employer to the*
3  *employee.*" *Redhair*, 183 P.3d at 548 (emphasis added). Accordingly, *Redhair* held that the
4  bonus contract was an "employment contract" subject to the one-year limitations period.

5        Here, Plaintiff's Agreement is similarly an "employment contract" governed by Section
6  12-541(3) because it defines specific responsibilities of TMCC to Plaintiff. Plaintiff, as employee
7  (Complaint, ¶ 8), and TMCC, as employer (Complaint, ¶ 11), entered into the Agreement
8  defining their specific responsibilities "[i]n connection with [Plaintiff's] promotion and
9  relocation" (Complaint, ¶ 15). The stated purpose of the Agreement was to define the terms and
10 conditions of Plaintiff's employment relocation as follows:

> The purpose of the Contract was to induce the Plaintiff, as the employee-party to the Contract, to accept relocation for the convenience of the Defendant, as the employer-party to the Contract, by providing for reimbursement of the expenses of relocation and assurances or guarantees against economic loss incurred or suffered by the employee-party as a result of the process of relocation.

14 Complaint, ¶ 48. Moreover, as Plaintiff concedes, the Agreement provided that "Plaintiff
15 remained an at-will employee" and that TMCC "did not guarantee the Plaintiff employment for
16 any length of time," *see* Plf. Opp., p. 5 (citing subsections 5.4 & 5.3, respectively), thus further
17 "defining specific responsibilities" of TMCC to Plaintiff. *Redhair, supra*. Consequently, the
18 Agreement is an "employment contract" governed by Section 12-541(3)'s one-year statute of
19 limitations, and Plaintiff's claim for breach of the covenant of good faith and fair dealing is
20 subject to a one-year statute of limitations.

21       Plaintiff's Complaint alleges that Plaintiff was promoted and entered into the Agreement
22 in December of 2006 and was terminated on February 2007. Complaint, ¶¶ 14, 22. Plaintiff did
23 not file his Complaint until April 28, 2008. *See* Complaint. Thus, Plaintiff's claim for breach of
24 the covenant of good faith and fair dealing is barred because Plaintiff did not file his Complaint
25 until more than a year after the Agreement was terminated.

26       Not surprisingly, Plaintiff fails to cite a single case in which a six-year statute of
27 limitations was applied in the employment context, and Plaintiff fails to mention *Redhair*.
28 Plaintiff cites to a construction case, which is factually inapposite. *See* Plf. Opp., p. 7 (citing

*Woodward v. Chirco Constr. Co.*, 687 P.2d 1269 (Ariz. 1984) (dealing with a construction contract)). Likewise, *Manterola v. Farmers Ins. Exch.*, 30 P.3d 639 (Ariz. Ct. App. 2001), to which Plaintiff cites for the alleged "disfavor" of the statute of limitations defense, is readily distinguishable because it involved insurance coverage. Moreover, the statute of limitations cannot be a significantly disfavored defense, since *Redhair* dismissed a breach of contract claim on a pleading motion on limitations grounds.[4]

          c. **Plaintiff's Claim Is Barred by the Arizona Employment Protection Act.**

Plaintiff's claim for breach of the implied covenant fails because Arizona does not recognize a tort claim for bad faith, and Plaintiff cannot state a claim under any of the four permissible theories provided by the Arizona Employment Protection Act ("AEPA"), Ariz. Rev. Stat. § 23-1501.

The Legislature intended the AEPA to set forth the exclusive means by which an employee may sue his employer for claims relating to termination of employment. Under the AEPA, an employee may only bring a claim for wrongful termination against the employer if the employer terminates the employment relationship (a) in breach of an "employment contract" (as defined in the AEPA), (b) in violation of an Arizona statute, (c) in retaliation for various things, or (d) in a case of public employment. Ariz. Rev. Stat. § 23-1501(3). Although certain common law torts survive the AEPA's exclusivity provision, *see Cronin v. Sheldon*, 991 P.2d 231, 241 (Ariz. 1999), Arizona does not recognize a common law tort of bad faith in employment termination cases, so a breach of covenant claim cannot sound in tort. *Fallar v. Compuware Corporation*, 202 F. Supp. 2d 1067 (D. Ariz. 2002); *Baron v. State of Arizona et al.*, 208 U.S. App. Lexis 6695 (9th Cir. 2008) ("Baron cannot state a claim for breach of the duty of good faith and fair dealing because 'there is no general tort for bad faith arising out of the termination of

---

[4] Plaintiff also contends that the Agreement is not an "employment contract" because Section 5.3 of the Agreement says it "is not a contract of employment and does not guarantee Associate employment for any length of time" *See* Plf. Opp., pp. 5. Plaintiff's contention is incorrect. First, the phrase "contract of employment" is used as a term of art when discussing whether an employment agreement is at-will or requires good cause. The phrase "contract of employment" in this context means the opposite of "at-will." As the phrase is used in the Agreement here, it explains that employment is at-will (no cause required to terminate) and for no guaranteed duration. Second, regardless of how the Agreement characterizes itself, Arizona law deems this type of contract an "employment contract" for purposes of Section 12-541(3), and the law trumps the characterization placed on the Agreement by the parties.

...

- 5 -

OR, IN THE ALTERNATIVE, MOTION TO STRIKE;
CASE NO. 2:08-CV-00802

1  employment contracts recognized under Arizona law,' [citing *Fallar*] and her claim does not fall
2  within one of the four exceptions to that general rule. Dismissal of this claim was proper.").[5]
3  Moreover, on its face the AEPA does not recognize a breach of covenant claim as a permissible
4  claim, so a breach of covenant claim is not a permissible claim under AEPA regardless of
5  whether it is asserted in tort or contract. *See Taylor v. Graham County Chamber of Commerce*,
6  33 P.3d 518, 527 (Ariz. Ct. App. 2001) (prior to enactment of AEPA, Arizona Supreme Court
7  recognized theory of implied covenant of good faith and fair dealing, "[b]ut the plain wording and
8  legislative intent of §23-1501 have changed the legal landscape. The EPA not only maintains the
9  at-will presumption but also specifies the limited exceptions to that general rule. § 23-1501(2).").

10  Here, Plaintiff's Fourth Claim for Relief alleges that TMCC breached the implied
11  covenant "[b]y terminating the Plaintiff in violation of law and without cause." Complaint, ¶ 51.
12  Thus, on its face, the Fourth Claim complains about Plaintiff's termination. Because it complains
13  about Plaintiff's termination, it is governed by the AEPA. As noted above, there is no "bad faith"
14  tort in Arizona. Thus, Plaintiff's claim for breach of the covenant of good faith cannot sound in
15  tort, and pursuant to AEPA's exclusivity provision, Plaintiff's breach of covenant claim must fall
16  within one of AEPA's enumerated theories of relief. *See Baron, supra; see also Bodett v.*
17  *Coxcom, Inc.,* 366 F.3d 736, 746 (9th Cir. 2004). Plaintiff was not a public employee, nor is he
18  alleging retaliation. *See* Ariz. Rev. Stat. § 23-1501(3)(c) & (d). Although he conclusorily alleges
19  that he was discharged "in violation of applicable law," Complaint, ¶51, he does not identify an
20  Arizona statute that he contends TMCC violated. *See* Ariz. Rev. Stat. § 23-1501(3)(b). Thus,
21  under the AEPA, his Fourth Claim for Relief can be pursued, if at all, only if he is alleging that he
22  was terminated in breach of an "employment contract." *See* Ariz. Rev. Stat. § 23-1501(3)(a).

23  Plaintiff contends that the Agreement was <u>not</u> an employment contract for purposes of
24  AEPA. *See* Plf. Opp., p.7. This leaves him without a recognized claim for relief, and requires
25  dismissal of this claim. TMCC agrees that for AEPA purposes, Plaintiff cannot pursue a claim
26  for breach of an employment contract and thus has no claim. The AEPA permits a claim for

---

[5] Plaintiff asserts that his Fourth Claim for relief "is one recognized at common law," Plt. Opp., p. 8, but he provides no legal authority for this proposition. The authorities that TMCC cites plainly state that there is no "bad faith" common law tort in Arizona.

breach of an employment contract relating to employment termination only if the employment contract meets certain statutory qualifications: the contract must be in writing, signed by both the employer and employee, and expressly set forth that the employment relationship is <u>not</u> at-will, shall remain in effect for a specified duration of time, or otherwise expressly restrict the right of either party to terminate the employment relationship. §23-501(2); *Taylor*, 33 P.3d at 527 ("to maintain an actionable breach of contract claim under the EPA and to avoid at-will employment status, an employee must establish one of the exceptions set forth in paragraph (2)"). Here, the Agreement contains no such express restrictions on the right of either party to terminate the employment relationship. To the contrary, the Agreement contains an explicit at-will provision (§ 5.4), states that employment is not guaranteed for any length of time (§5.3), and further states that the benefits will cease if employment is terminated voluntarily or involuntarily (§2.1.1). Thus, as a matter of law, the Agreement is not the type of "employment contract" for which the AEPA provides a claim, and Plaintiff cannot state a claim under AEPA's "employment contract" provision. Plaintiff's claim for breach of the implied covenant must be dismissed.

**3.  Even if California Law Applies, Plaintiff's Fourth Claim Fails.**

  **a.  Plaintiff Fails to State a Claim for Breach of the Covenant Under California Law.**

Even if California law applies, which TMCC denies, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails to state a claim upon which relief can be granted. Under California law, there is a strong statutory presumption that employment is at-will. Cal. Lab. Code §2922. Here, the Agreement contains an explicit "at-will" provision: "Associate understands and agrees that Associate is employed at-will, and that either Associate or Toyota may terminate Associate's employment at any time, with or without cause, and with or without notice." Agreement, § 5.4. The California Supreme Court has long emphasized that the nature and extent of the implied covenant of good faith and fair dealing is limited by the *explicit promises* contained in the parties' agreement. *Foley v. Interactive Data Corp.,* 765 P.2d 373, 394 (Cal. 1988). Where, as here, the contract contains an explicit at-will provision, the covenant cannot be used to add a contract provision requiring "cause." *Foley,* 765 P.2d at 400, n.39 ("[W]ith regard to an at-will employment relationship, breach of the implied covenant cannot

logically be based on a claim that a discharge was made without good cause."); *Guz v. Bechtel National,* 8 P.3d 1089, 1110 (Cal. 2000) ("[t]he covenant cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."). Nor, of course, can the covenant be used to prohibit that which a contract expressly permits. *Carma Developers v. Marathon Devel. California*, 826 P.2d 710, 728 (Cal. 1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."); *see also Guz*, 8 P.3d at 1103 n.10 ("[A]n at-will provision in an express written agreement, signed by the employee, cannot be overcome by proof of an implied contrary understanding."). Here, that is precisely what Plaintiff tries to do—to add a new "cause" provision that flatly contradicts the express at-will provision.

Plaintiff's Opposition incorrectly cites to *Guz* for the proposition that the implied covenant imposes a duty on TMCC not to terminate the Agreement except for good cause. But Plaintiff reads *Guz* selectively while ignoring its clear mandate—that the implied covenant cannot *create* contractual duties where *none exist. Guz,* 8 P.3d at 1110. Plaintiff argues for that which *Guz* clearly proscribes. Therefore, Plaintiff's implied covenant claim fails under California law.[6]

---

[6] Nor has Plaintiff pled sufficient facts to establish that the Agreement was terminated "unfairly" or with "bad faith," as Plaintiff concedes is required for a breach of covenant claim under California law. *See* Complaint, ¶¶ 46-52; *Guz*, 8 P.3d at 1110 ("[t]he covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from *unfairly* frustrating the other party's right to receive the benefits of the agreement actually made") (emphasis added); *see also* Plf. Opp., p. 6 (quoting same holding from *Guz*). Here, Plaintiff's vague allegation that he was discharged "in violation of applicable law and without cause" is insufficient to demonstrate that his benefits were terminated "unfairly" or with "bad faith." *See* Complaint, ¶ 50. Under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007), abrogating *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), and citing with approval 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65. For purposes of a motion to dismiss, the Court should not accept as true <u>unreasonable inferences</u> or <u>conclusory legal allegations</u> cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim.").

### b. **Plaintiff Seeks Improper Remedies for His Fourth Claim for Relief for Breach of the Covenant.**

#### (1) Arizona Law.

Plaintiff's claim for breach of the covenant of good faith and fair dealing, to the extent it can be stated at all, is limited to contract remedies.[7] Under Arizona law, "the remedy for breach of [the] implied covenant [of good faith and fair dealing] is ordinarily by action on the contract." *Burkons v. Ticor Title Ins.*, 813 P.2d 710, 720 (Ariz. 1991); *see also Wells Fargo Bank v. Ariz. Laborers*, 38 P.3d 12, 29 (Ariz. 2002) (absent a "special relationship," bad faith claims sound in contract, not tort). Thus, Plaintiff's argument that non-contract damages are available on this claim relies on the existence of a "special relationship" between the parties. Plaintiff fails, however, to point to a single case with a special relationship between an employee and employer. *See* Plf. Opp., pp. 8-9. For example, *Hunter v. Upright*, 864 P.2d 88 (Cal. 1993) and *Rawlings v. Apodaca*, 726 P.2d 565 (Ariz. 1986) both involved a relationship between an insurance company and insured. Furthermore, *Burkons v. Ticor Title Ins. Co.*, 813 P.2d 710 (Ariz. 1991) involved an escrow agent and client, and the court found that no special relationship existed. *Id*. at 720-21. Thus, Plaintiff fails to demonstrate any "special relationship" as the basis for tort remedies.[8]

#### (2) California Law.

Plaintiff's contention that non-contractual remedies can be recovered for breach of the covenant under California law is frivolous. California courts view the implied covenant as "essentially . . . a contract term." *Cates Constr. v. Talbot Partners*, 980 P.2d 407, 415-16 (Cal. 1999). "[C]ompensation for its breach has almost always been limited to contract rather than tort remedies." *Id.* (quoting *Foley*, 765 P.2d at 389). The only recognized exception to this rule applies to cases involving insurance policies. *Id.* (citing *Hunter*, 864 P.2d 88, 90-91 (Cal. 1993)). But the Agreement is not an insurance policy. In 2000, the California Supreme Court laid to rest

---

[7] Of course, to the extent Plaintiff's claim is preempted by AEPA (discussed above), AEPA bars recovery of tort damages. *See Fallar*, 202 F. Supp. 2d at 1076 (under Arizona law, "there is no general tort for bad faith arising out of the termination of employment contracts").

[8] Plaintiff asserts that he "seeks consequential damages, which are not tort damages but contract damages." Plf. Opp., p. 8. This statement is astonishing. Plaintiff's Prayer for Relief on his Fourth Claim separates "contract damages" (¶ 52(a)) from "consequential damages, including reimbursement for emotional harm" (¶ 52(b)). Moreover, emotional distress damages are classic tort damages, not contractual damages. Similarly, Plaintiff seeks punitive damages (¶52(c)), which are not contractual relief. Plaintiff's prayer for attorney's fees (¶52(d)) is also unwarranted because there is no attorney fee provision in the Agreement.

any possible doubts as to the remedies for breach of the covenant in the employment context:

> [A]s we explained at length in *Foley*, the remedy for breach of an <u>employment agreement</u>, including the covenant of good faith and fair dealing implied by law therein, is *solely contractual*. In the <u>employment context</u>, an implied covenant theory affords no separate *measure of recovery*, such as tort damages. (*Foley, supra*, 47 Cal.3d 654, 682-700, 254 Cal.Rptr. 211, 765 P.2d 373.) Allegations that the breach was wrongful, in bad faith, arbitrary, and unfair are unavailing; <u>there is no tort of "bad faith breach" of an employment contract</u>. We adhere to these principles here.

*Guz*, 8 P.3d at 1112 (italics in original, underlines added). Because Plaintiff cannot recover any non-contract damages under either Arizona or California law, any references to such damages in connection with his Fourth Claim for Relief must be stricken from the Complaint.

### B. Plaintiff's Fifth Claim for Relief for Intentional Infliction of Emotional Distress Fails.

Plaintiff's Fifth Claim for Relief for intentional infliction of emotional distress fails to state a claim under Arizona or California law, and thus should be dismissed.

#### 1. Plaintiff's Claim Fails Under Arizona Law.

Under Arizona law, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atlantic Systems*, 183 Ariz. 550, 554 (1995). Plaintiff entirely fails to address the merits of TMCC's argument under Arizona law. His sole reference to Arizona law is to contend that a motion to dismiss is not favored under Arizona law. Plt. Opp., p. 11 n. 1. But motions to dismiss in federal court under Rule 12(b)(6) are not disfavored. In any event, the Arizona cases TMCC cites in its moving papers control here. *See, e.g., Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz.1994); *Perez v. Curcio*, 710 F. Supp. 259, 262 (D. Ariz. 1989). Plaintiff's Fifth Claim fails under Arizona law and must be dismissed.

#### 2. Plaintiff's Claim Fails Under California Law.

Plaintiff also fails to state a claim for IIED under California law.[9] The cases TMCC cited

---

[9] Plaintiff's Opposition improperly attempts to inject new allegations not set forth in his Complaint. *See* Plf. Opp., p. 10. For example, Plaintiff's Opposition states he was subjected to "'third degree' interrogation," "lulled into false state of comfort," and "interrogated coldly and mercilessly." *See id.* These statements are nowhere in the Complaint, and thus should be disregarded. *See S.E.C. v. Cross Financial Services, Inc.*, 908 F. Supp. 718, 726 (C.D. Cal. 1995). Plaintiff is not free to concoct new or embellished allegations in his Opposition to a Rule 12(b)(6) motion.

in its moving papers specifically involve the conduct Plaintiff alleges—a purportedly "coercive investigation" and leaking false information to the industry—and Plaintiff failed to address them. *See* TMCC's Brf., pp. 10-11. The California cases that Plaintiff cites are factually distinguishable. For example, *Rulon-Miller v. IBM*, 162 Cal. App. 3d 241, 255 (1984), involving an invasion of the fundamental right to privacy regarding a romantic relationship, and *Gibson v. American Airlines,* 1996 U.S. Dist. LEXIS 7977, at *11-12 (N.D. Cal. June 4, 1996), involving denial of medical leave for a child's illness, have much narrower holdings than Plaintiff contends: "where a *fundamental interest* of the employee is violated in a deceptive manner that results in the plaintiff being denied *rights granted to other employees*, a case for intentional infliction of emotional distress may lie." *Gibson,* 1996 U.S. Dist. LEXIS 7977, at *11-12 (citing *Rulon-Miller*, 162 Cal. App. 3d at 255) (emphasis added). Plaintiff's Complaint fails to allege that TMCC's conduct impinged any fundamental interests or that other employees were granted "rights" to relocation benefits. This Claim must be dismissed. *See* Complaint, ¶¶ 53- 55.[10]

### III.    CONCLUSION

For the reasons set forth above, TMCC respectfully requests that the Court grant its motion in entirety and dismiss with prejudice Plaintiff's Fourth and Fifth Claims for Relief.

Dated: October 10, 2008

PATRICIA K. GILLETTE
JOSEPH C. LIBURT
BROOKE D. ANDRICH
Orrick, Herrington & Sutcliffe LLP

/s/ Brooke D. Andrich

BROOKE D. ANDRICH
Attorneys for Defendant
Toyota Motor Credit Corporation

---

[10] Plaintiff's remaining cases are neither binding nor instructive. Notably, Plaintiff has to look as far afield as Vermont, Illinois, Oregon, and Arkansas to try to find support for his IIED claim. All of Plaintiff's cases are distinguishable. *See Smithson v. Nordstrom, Inc.*, 664 P.2d 1119 (Or. 1983) (employee .not free to leave and asked to sign confession); *Tandy v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (Ark. 1984) (involved denial of medicine); *Graham v. Commonwealth Edison*, 742 N.E.2d 858 (Ill. App. Ct. 2000) (sham investigation); *Crump v. P&C Food Markets*, 576 A.2d 441 (Vt. 1990) (no advance notice of meeting provided and immediate dismissal following meeting). Even if these cases were binding authority, Plaintiff's Complaint alleges none of these facts as attendant to Plaintiff's supposed "interrogation." *See* Complaint, ¶¶ 18-22, 53-56.

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on October 10, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| James Burr Shields, II | burrshields@jbslaw.net, gailivey@jbslaw.net |
| John A. Conley | johnconley@jbslaw.net |
| W. Blake Simms | blackesimms@jbslaw.net |
| Patricia Kruse Gillette | pgillette@orrick.com, pdawson@orrick.com |
| Joseph Charles Liburt | jiliburt@orrick.com, tmcbride@orrick.com |
| Brooke D. Andrich | bandrich@orrick.com, elee@orrick.com |

☐ I hereby certify that on _____, I served the attached document by _____ (insert service method: mail, courier service, in-person delivery, e-mail) on the following, who are not registered participants of the CM/ECF System:

_____

_____

                                              /s/ Mirtha M. Rodas
                                              Mirtha M. Rodas