IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


```
LAWRENCE RANDAZZO,                      )
                                        )
                      Plaintiff,        )
                                        )
          vs.                           )
                                        )
TOYOTA MOTOR CREDIT CORPORATION,        )
a/k/a Toyota Financial Services,        )
                                        )   No. 2:08-cv-0802-HRH
                      Defendant.        )
_____)
```


O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's fourth and fifth causes of action, or in the alternative to strike any reference to non-contractual damages in connection with plaintiff's fourth claim for relief.[1]  This motion is opposed.[2]  Oral argument was requested and has been heard.

Background

Plaintiff is Lawrence Randazzo.  Defendant is Toyota Motor Credit Corporation.

---

[1]     Docket No. 14.

[2]     Docket No. 19.

Plaintiff, who is a white male of Italian-American origin,[3] was employed by defendant from April 1, 2005 until February 2, 2007. Plaintiff alleges that at all relevant times, he was "assigned" to defendant's Torrance, California headquarters office, worked out of the Western Collections Service Center office in Chandler, Arizona, and resided in Gilbert, Arizona.[4]

Plaintiff further alleges that his performance while working for defendant met or exceeded defendant's expectations and he was promoted once in early 2006, received a bonus in October 2006, and was selected for a second promotion in early December 2006.[5]  The December 2006 promotion was for a position in Baltimore, Maryland. In connection with that promotion, plaintiff and defendant entered into the Toyota Relocation and Repayment Agreement,[6] which plaintiff signed on December 18, 2007.[7]  The Relocation Agreement provides that defendant would pay plaintiff certain "Relocation Benefits" but "[i]f a Triggering Event occurs, Associate's Relocation Benefits

---

[3]      Complaint at 2, ¶ 7, Docket No. 1.

[4]      Id. at 2-3, ¶¶ 8, 9, and 12.

[5]      Id. at 3, ¶¶ 13-14.

[6]      Id. at ¶ 15.

[7]      Toyota Relocation and Repayment Agreement at 3, Exhibit A, Request for Judicial Notice, Docket No. 15.  The court may consider this exhibit without converting the instant motion to dismiss into a motion for summary judgment because the Relocation Agreement is incorporated by reference in plaintiff's complaint. See U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

shall cease and Associate shall no longer be entitled to receive such benefits."[8]   A "Triggering Event" included "Associate's separation from Toyota for any reason, voluntary or involuntary, within twenty four (24) months of Associate's Effective Date of Relocation[.]"[9]

In early January 2007, plaintiff entered into a contract for the purchase of a new home in York, Pennsylvania, which was within commuting distance of his work location in Baltimore.  On or about January 10, 2007, plaintiff was advised that Anthony Marino, the person who had recruited him to work for defendant, had been discharged after being accused of taking kickbacks from collection agencies.[10]

On or about January 18, 2007, plaintiff was interviewed at defendant's offices in Torrance, California, as part of an internal investigation of the Marino matter.[11]  Plaintiff alleges that "[t]he tone of the questioning and the demeanor of the interrogators was hostile, and the interrogation itself was oppressive and coercive."[12]  After plaintiff returned to Arizona, defendant requested that he

---

[8]   Toyota Relocation and Repayment Agreement at 1, ¶ 2.1, Exhibit A, Request for Judicial Notice, Docket No. 15.

[9]   Id. at ¶ 2.1.1.

[10]   Complaint at 3-4, ¶ 17, Docket No. 1.

[11]   Id. at 4, ¶ 18.

[12]   Id. at ¶ 20.

provide answers to additional written questions.[13]   On or about
January 26, 2007, plaintiff was placed on administrative leave, and
on or about February 1, 2007, plaintiff was notified that he was
being discharged effective February 2, 2007.[14]

As a result of his discharge, plaintiff alleges that he was
forced to forfeit the $25,000 deposit he had made on the house in
York and that he was denied other benefits under the Relocation
Agreement.[15]   Plaintiff also alleges that defendant "permitted false
and derogatory information to be leaked to the credit industry
suggesting a relationship between the termination of Anthony Marino
and the subsequent discharge of the [p]laintiff."[16]

Plaintiff filed a charge of discrimination with the EEOC,
alleging that he had been terminated because of his race, gender,
and/or national origin.   A right to sue letter was issued on January
31, 2008.  Plaintiff commenced the instant action on April 28, 2008.

Plaintiff alleges five causes of action in his complaint.
Count I is a Title VII claim based on race.   Count II is a Title VII
claim based on gender.   Count III is a Title VII claim based on
national origin.   Count IV is a state-law claim brought under
California law for breach of the implied covenant of good faith and

---

[13]    Id. at ¶ 21.

[14]    Id. at ¶ 22.

[15]    Id. at 5, ¶¶ 24-25.

[16]    Id. at ¶ 26.

fair dealing.  In his prayer for relief on count IV, plaintiff seeks contractual damages; consequential damages, including reimbursement for emotional harm; and punitive damages.[17]  Count V is an intentional infliction of emotional distress claim.

Defendant now moves to dismiss plaintiff's counts IV and V. In the alternative, defendant seeks to strike plaintiff's request for consequential and punitive damages in connection with count IV.

Discussion

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Medical Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  "'All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.'"  Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120 (9th Cir. 2007) (quoting McGary v. City of Portland, 386 F.3d 1259, 1261 (9th Cir. 2004)).  "To survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).

---

[17]     Id. at 9.

Count IV

In count IV, plaintiff alleges a breach of the implied covenant of good faith and fair dealing based on the Relocation Agreement. Plaintiff alleges that his termination without cause breached the implied covenant of good faith because it denied him the benefits of the Relocation Agreement.[18]  Plaintiff contends that a "good cause" element is necessarily implied in the Relocation Agreement, and that if defendant terminates an employee without cause, defendant must continue to pay the Relocation Benefits.

The parties disagree as to whether count IV is governed by California law or Arizona law.  In his complaint, plaintiff alleges that the Relocation Agreement was "entered into in California and [is] governed by California law."[19]  But, defendant insists that Arizona law applies because plaintiff resided in Arizona, he worked in Arizona, defendant did business in Arizona, and the subject matter of the Relocation Agreement involved a relocation from Arizona.

"When a federal court exercises supplemental jurisdiction, 'the federal court applies the choice-of-law rules of the forum state,' which in this case is [Arizona.]"  Douglas v. U.S. Dist. Court for Cent. Dist. of Cal., 495 F.3d 1062, 1067 n.2 (9th Cir. 2007) (quoting Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d

---

[18]     Complaint at 9, ¶ 49, Docket No. 1.

[19]     Id. at 8, ¶ 47.

1151, 1164 (9th Cir. 1996)).  Under Arizona law, the court only has to perform a choice of law analysis when there is a true difference in the law of the two jurisdictions with an interest in the dispute. Lucero v. Valdez, 884 P.2d 199, 207 (Ariz. Ct. App. 1994) (McGregor, J., dissenting).  "No true conflict exists unless 'the laws of the two jurisdictions differ.'"  Id. (quoting Waggoner v. Snow, Becker, Kroll, Klaris & Kraus, 991 F.2d 1501, 1506 (9th Cir. 1993)).

Under Arizona law, "an implied covenant of good faith and fair dealing cannot directly contradict an express contract term." Kuehn v. Stanley, 91 P.3d 346, 354 (Ariz. Ct. App. 2004).  The same is true under California law.  See Carma Developers (Cal.), Inc. v. Marathon Development of Cal., Inc., 826 P.2d 710, 728 (Cal. 1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.  On the contrary, as a general matter, implied terms should never be read to vary express terms.").  Thus, under either Arizona or California law, the implied covenant cannot be used to alter the express terms of the contract.  Because the law of California and Arizona do not differ on the issue that the court finds dispositive, the court does not need to perform a choice of law analysis and may apply Arizona law.

Under Arizona law, the implied "covenant requires that neither party act to impair the right of the other to receive the benefits that flow from their agreement or contractual relationship." Kuehn,

91 P.3d at 354.  "As a general rule, an implied covenant of good faith and fair dealing cannot directly contradict an express contract term."  <u>Id.</u>  "Accordingly, 'the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to.'"  <u>Id.</u> (quoting <u>Rawlings v. Apodaca</u>, 726 P.2d 565, 570 (Ariz. 1986)).

The Relocation Agreement provides that the employee will no longer be entitled to receive Relocation Benefits if the employee "separat[es] from Toyota <u>for any reason, voluntary or involuntary</u>[.]"[20]  The Relocation Agreement further provides:

> Associate understands and agrees that Associate is employed at-will, and <u>that either Associate or Toyota may terminate Associate's employment at any time, with or without cause, and with or without notice</u>.  Associate further understands and acknowledges that Associate's at-will status can be changed only in a writing explicitly changes Associate's at-will status that is signed by the President, Executive Vice President or Senior Vice President of Employer.[21]

Thus, what the parties agreed to in the Relocation Agreement was that if plaintiff were terminated, defendant did not have to pay Relocation Benefits and that plaintiff remained an "at-will" employee, whom defendant could terminate at any time with or without cause.  The parties did not agree that defendant could only

---

[20]   Toyota Relocation and Repayment Agreement at 1, ¶ 2.1, Exhibit A, Request for Judicial  Notice, Docket No. 15 (emphasis added).

[21]   <u>Id.</u> at 3, ¶ 5.4 (emphasis added).

terminate plaintiff for cause, or that if defendant terminated plaintiff without cause, it still had to pay Relocation Benefits. Because the "good cause" provision that plaintiff argues is implied in the Relocation Agreement plainly contradicts the express terms of the Relocation Agreement, plaintiff's breach of the implied covenant claim is not plausible on its face and must be dismissed.

Because the court concludes that plaintiff's breach of the implied covenant claim is not plausible on its face, the court does not need to consider defendant's alternative arguments that the breach of implied covenant claim is barred by the statute of limitations or the Arizona Employment Protection Act.

Count V

In count V, plaintiff alleges an intentional infliction of emotional distress (IIED) claim. Defendant argues that plaintiff's IIED claim must be dismissed because plaintiff has not alleged sufficient facts to support an allegation that defendant's conduct was extreme and outrageous.

There is some disagreement between the parties as to whether Arizona or California law applies to this claim. But, again, the court does not need to perform a choice of law analysis because there is not a true difference in the law of the two jurisdictions as it relates to the issue at hand. Under Arizona law, in order to prevail on an IIED claim, a plaintiff "must show that the defendant's acts were 'so outrageous in character and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  <u>Mintz v. Bell Atlantic Systems Leasing Int'l., Inc.</u>, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (quoting <u>Cluff v. Farmers Ins. Exchange</u>, 460 P.2d 666, 668 (Ariz. 1969)).  Under California law, to prevail on an IIED claim, a plaintiff must show that the defendant's conduct "exceed[ed] all bounds of that usually tolerated in a civilized community.'" <u>Fowler v. Varian Assocs., Inc.</u>, 241 Cal. Rptr. 539, 545 (Cal. Ct. App. 1987) (quoting <u>Davidson v. City of Westminster</u>, 649 P.2d 894, 901 (Cal. 1982)).

Plaintiff's allegations of defendant's extreme and outrageous conduct are based on defendant's "coercive investigation ... including misrepresentation of its nature followed by an oppressive interrogation" and defendant's "allowing false and derogatory information regarding [p]laintiff to be leaked to the credit industry[.]"[22] More specifically, plaintiff alleges that he was told that the "interview" would be "routine" and that it would be with defendant's corporate counsel.[23]  Instead, plaintiff alleges, the "interview" was conducted by "three attorneys and an acting vice-president" and "[t]he tone of the questioning and the demeanor of

---

[22]    Complaint at 9, ¶ 53, Docket No. 1.

[23]    <u>Id.</u> at 4, ¶ 18.

the interrogators was hostile[.]"[24]  Plaintiff further alleges that "[t]he effect of the interrogation and the manner in which it was conducted led [him] to reasonably ... conclude that he was being accused of wrongdoing and that the whole purpose of the interrogation was to trap or trick [plaintiff] into making some kind of admission or misstatement."[25]  These facts are sufficient to state an IIED claim that is plausible on its face, and plaintiff's IIED will not be dismissed.

<u>Conclusion</u>

Defendant's motion to dismiss[26] is granted in part and denied in part.  Plaintiff's breach of the implied covenant of good faith claim in count IV is dismissed with prejudice.

DATED at Anchorage, Alaska, this <u>11th</u> day of December, 2008.

<u>/s/ H. Russel Holland</u>
United States District Judge

---

[24]    <u>Id.</u> at ¶¶ 19-20.

[25]    <u>Id.</u> at ¶ 20.

[26]    Docket No. 14.